**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL G. HOROWITZ,

    Plaintiff,

v.

RONALD A. TSCHETTER,

    Defendant.

No. C 06-05020 CRB

**MEMORANDUM AND ORDER RE: MOTION TO DISMISS**

Michael Horowitz ("Plaintiff") claims that the Peace Corps forced him to resign from his position as a volunteer in the Kingdom of Tonga, and in doing so, discriminated against him on the basis of his age and his presumed sexual orientation. His complaint putatively sets forth causes of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; the Administrative Procedure Act, 5 U.S.C. § 702; and the Tucker Act, 28 U.S.C. § 1346. Now pending before the Court is a motion to dismiss filed by the Director of the Peace Corps, Ronald Tschetter ("Defendant"). For the reasons set forth below, Defendant's motion to dismiss is hereby GRANTED.

//
//
//
//

# FACTS[1]

In 1997, Plaintiff began serving as a Peace Corps volunteer in the Kingdom of Tonga. (Am. Compl. ¶ 19.) By his own account, Plaintiff was an exemplary volunteer. (Id. ¶ 21.) Within two years of beginning his service, Plaintiff had advanced from a position in the tourism development office at the Commerce Ministry of Tongo to become an associate dean and the head of the sociology department at the University Division of the Atenisi Institute, a leading academic institution and a center for political reform in the country. (Id. ¶¶ 19-21.) According to Plaintiff, he was also considered for the position of Dean of the Atenisi Institute. (Id. ¶ 23.) Plaintiff further alleges that the Peace Corps recognized him as an exceptional volunteer by conferring upon him the privilege of extended service as a volunteer in Tonga and recommending him for two years of subsequent service in another Peace Corps program called the United Nations Volunteers. (Id. ¶ 21.)

Plaintiff's career as a Peace Corps volunteer in Tonga ended abruptly, however, amid a scandal. On March 8, 1999, an unidentified informant reported to the Peace Corps that Plaintiff had made homosexual advances toward a young Tongan national many months earlier. (Id. ¶ 24.) The director of the Peace Corps' post in Tonga, Arturo Giron, confronted Plaintiff about these allegations in a meeting two days later, but declined to reveal the informant's name or to provide a written copy of the allegations. (Id. ¶ 27.) According to Plaintiff, the Peace Corps was concerned about the informant's allegations both because they involved homosexuality, which generally is viewed unfavorably in Tongan culture, and because they appeared to involve an encounter between Plaintiff, who was 53 at the time, and a Tongan who was of "student age." (See id. ¶¶ 24, 29-30, 33, 35-36.)

---

[1] The facts are recited here as they are set forth in Plaintiff's complaint, which this Court generally must accept as true in the context of a motion to dismiss. Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006). The facts set forth here, however, are in many respects inconsistent with the facts as they were determined by a federal district court in related litigation. See Horowitz v. Peace Corps, No. 00-808, at 9 (D.D.C. Jan. 6, 2004) (adopting the findings of fact and conclusions of law proposed by the Peace Corps), aff'd in relevant part, 428 F.3d 271 (D.C. Cir. 2005). As explained below, some of the differences between the allegations set forth in the complaint and the facts previously adjudicated in other litigation are relevant to (though not dispositive of) Defendant's motion to dismiss. In all aspects that are material to the Court's decision to grant the motion to dismiss, however, the facts Plaintiff's the complaint are taken as true and construed in the light most favorable to him.

2

1    Plaintiff alleges that on two occasions the Peace Corps communicated its intent to
2 terminate him as a volunteer.  He alleges that on March 15, 1999, approximately a week after
3 the allegations were made, Giron contacted Plaintiff's Tongan attorney and indicated "that
4 Plaintiff would be imminently terminated from Peace Corps solely because of the alleged
5 homosexual advance."  (Id. ¶ 35.)   He also alleges that the following day, on March 16,
6 1999, Giron held a meeting with Plaintiff and told him that "he would be separated within 18
7 hours because the alleged homosexual advance violated Tongan law," a legal proposition that
8 Plaintiff claims is false.  (Id. ¶¶ 29, 36.)  According to Plaintiff, at this second meeting Giron
9 showed him an Administrative Separation Report ("ASR"), which Giron threatened to lodge
10 with the Peace Corps in order to terminate him.  (Id. ¶ 36.)  Plaintiff states that this ASR
11 included details about the allegations made against him and, if filed, would have become
12 available to other government agencies and programs.  (Id.)  According to Plaintiff, Giron
13 offered Plaintiff the option of resigning from his volunteer post, and Plaintiff states that he
14 agreed to resign because he thought he was "[f]aced with certain termination" and a "dire
15 threat" to his future volunteer opportunities.  (Id.)  Plaintiff tendered his formal resignation
16 the following day, on March 17, 1999.  (Id.)

17    Following his resignation, Plaintiff pursued a grievance with the Peace Corps in two
18 ways.  First, he pursued administrative measures to obtain a copy of certain documents
19 relating to his resignation.  Within two months of his termination, on May 31, 1999, Plaintiff
20 had retained an attorney in Tonga and had sent a request to the Peace Corp for a written copy
21 of the informant's allegations against him.  (Id. ¶ 41.)  By June 18, 1999, Plaintiff's attorney
22 had also filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,
23 seeking a copy of the ASR that Giron had shown to Plaintiff during their meeting.  (Id.)  The
24 Peace Corps refused to disclose these documents.  (Id.)

25    Second, Plaintiff pursued a claim for discrimination against the Peace Corps.  In April
26 and again in July of 1999, Plaintiff reported the circumstances of his termination to an
27 advocacy group called the Lesbian, Gay, and Bisexual Group of Returned Peace Corps
28 Volunteers, which subsequently informed him of certain administrative remedies available to

3

him and advised him to file an discrimination complaint with an Peace Corps division called the American Diversity Program. (Id. ¶¶ 40, 42.) Plaintiff filed what he calls "an allegation of sexual orientation discrimination" against the Peace Corps on September 27, 1999, approximately six months after he tendered his resignation. (Id. ¶ 42.) When discussions with a counselor and other officials from the dispute resolution program did not resolve the issue, Plaintiff filed a formal complaint on March 30, 2000. (Id. ¶¶ 43-46.) On April 27, 2000, the Peace Corps dismissed the complaint as untimely because Plaintiff had failed to bring the matter to the agency's attention "within 30 days of the alleged discriminatory act." (Am. Compl., Ex. B at 1 (quoting 45 U.S.C. § 1225.8(a)).)

## PROCEDURAL HISTORY

After he was unsuccessful in pursuing his grievance against the Peace Corps through administrative measures, Plaintiff renewed his dual complaints against the Peace Corps in federal court. On April 18, 2000, he filed a complaint in the District of Columbia under FOIA seeking to compel the Peace Corps to disclose (1) the identity of the Tongan national with whom he had allegedly been involved in homosexual encounters, and (2) the ASR prepared by Giron in anticipation of Plaintiff's possible termination. A little more than a month later, on May 30, 2000, Plaintiff also filed a complaint in this case for discrimination, arbitrary termination, and breach of contract. The district court stayed proceedings in this lawsuit while Plaintiff pursued his FOIA request.

As to the FOIA litigation, the district court eventually granted partial summary judgment to Plaintiff, and partial summary judgment to the Peace Corps. See Request for Judicial Notice in Support of Defs' Motion to Dismiss, Ex. F (hereinafter "D. Ct. Op."). On the one hand, the court ruled that the release of the Tongan national's name would not be a clearly unwarranted invasion of privacy, and that Plaintiff was therefore entitled to know the Tongan's identity. (D. Ct. Op. at 1-3.) On the other hand, the district court ruled that Plaintiff was not entitled to see the ASR prepared by Giron. (Id. at 1.)

Significantly, in the course of adjudicating Plaintiff's request to obtain the ASR, the district court held an evidentiary hearing. The key question at the hearing was whether the

4

ASR was "predecisional," in which case it would not have been subject to disclosure under FOIA, see 5 U.S.C. § 552(b)(5), or whether the ASR had been drafted after Giron had already made a decision to terminate Plaintiff, in which case it would have been subject to disclosure as a "postdecisional" document. The district court heard testimony from six witnesses over the course of two days. (D. Ct. Op. at 4.) The court found that Plaintiff was "elusive" and his testimony "contradictory." (Id. at 6-7.) After evaluating the credibility of the witnesses and considering all the evidence, the district court accepted the Peace Corps' proposed findings of fact and conclusions of law in their entirety. (Id. at 9.) Significantly, these findings of fact included the following determination:

> While Mr. Giron testified that he may have referenced the draft [ASR] in his discussions with Mr. Horowitz prior to Mr. Horowitz's announcement of his decision to resign, and may have let Mr. Horowitz know, in the interests of full and fair disclosure, that the document was being sent to Washington, D.C., there is no credible evidence that Mr. Giron disclosed this information with the intent to coerce Mr. Horowitz to resign. Nor is there credible evidence that Mr. Giron disclosed this information to give Mr. Horowitz the impression that a final determination had been made to administratively separate Mr. Horowitz.

See Judicial Notice in Support of Defs' Motion to Dismiss, Ex. E, at 9 (hereinafter "Proposed Findings and Conclusions"). Relying on this and other factual findings regarding Giron's creation of the ASR, the district court concluded that the document was a "deliberative" and "predecisional" communication within the agency, rather than a final determination by the Peace Corps. Id. at 5. The district court held that the document was therefore unavailable to Plaintiff under FOIA. Id. at 10-15 (citing 5 U.S.C. § 552(b)(5)).

Plaintiff and Defendant each appealed the district court's rulings. In a published decision, the D.C. Circuit affirmed in part and reversed in part. Horowitz v. Peace Corps, 428 F.3d 271 (D.C. Cir. 2005). The court held that Plaintiff was not entitled to the disclosure of *either* the predecisional ASR *or* the Tongan national's name. Id. at 274. In its decision, the court of appeals relied on, and thereby affirmed, the factual findings of the district court. Id. at 277. In particular, the D.C. Circuit upheld the district court's determination that, at the time of the meeting, Giron had made no final decision about whether to terminate Plaintiff's service with the Peace Corps:

5

> Horowitz argues, however, that the document lost its predecisional status by being adopted as the official agency position regarding his administrative separation; in essence, he contends that Giron had already decided to terminate his service before he resigned, even though the decision was not formally executed. After evaluating the witnesses' testimony and credibility, the district court concluded Giron had not made a final decision about separating Horowitz. The document was prepared as an aid for Giron's decision-making process and for consultation with other Peace Corps officials. Hence, the document qualified as deliberative and predecisional. We are not persuaded the district court's findings on these points are clearly erroneous.

Id. Plaintiff's subsequent petition for certiorari to the United States Supreme Court was denied. At the conclusion of these FOIA proceedings, Plaintiff's original suit for discrimination was transferred, by order of the district court, to the Northern District of California. Upon order of this Court, the stay of proceedings was lifted. Defendant then filed a motion to dismiss, which is currently pending before the Court.

## DISCUSSION

The Peace Corps first contends that this action is barred by the doctrine of collateral estoppel. In the alternative, the government argues that Plaintiff has failed to state a claim under either the ADEA, the APA, or the Tucker Act.

### I. Collateral Estoppel

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." Clark v. Bear Stearns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992).

Here, the government argues that the prior FOIA litigation in connection with this case precludes Plaintiff from maintaining this lawsuit. The government notes that the district court and the D.C. Circuit both concluded that the Peace Corps never reached a final decision about whether to terminate Plaintiff. See D. Ct. Op. at 7-10; Proposed Findings and Conclusions ¶¶ 11-12, 15-16; Horowitz, 428 F.3d at 276-77. The government argues that

Plaintiff's claims of forced resignation "cannot logically square with the binding fact that the Peace Corp[s] had never reached a decision on the matter in the first place." Def.'s Mot. to Dismiss Am. Compl. at 9-10.  According to the government, the prior FOIA adjudication "vitiates the entire lawsuit" because "[a]ll three of [his] claims are based on his alleged forced resignation, which he claims was arbitrary in violation of the APA, discriminatory under the ADEA, and in breach of an allegedly implied contract under the Little Tucker Act." Id. at 8.

The Court disagrees.  The issue adjudicated in the FOIA litigation was whether the ASR was a "predecisional" or "postdecisional" document.  The courts resolved that issue against Plaintiff in part because of its factual determination that the Peace Corps never made a final decision about whether to terminate Plaintiff.  Rather, the courts ruled that the Peace Corps had been spared that ultimate decision by Plaintiff's own decision to resign.  Those legal and factual questions, however, are very different from the issue presented in this case: whether Plaintiff was in effect *forced* to resign.  As to *that* mixed question of fact and law, the prior FOIA litigation does not have preclusive effect.  After all, an agency can in effect compel a volunteer's or employee's termination without actually making a decision to terminate the person.  See Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987) ("A constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" (quoting Satterwhite v. Smith, 744 F.2d 1380, 1381 (9th Cir.1984))).

Simply put, the issues of fact and law presented by Plaintiff's claims of discrimination are not "identical to the one alleged in the [FOIA] litigation." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004).  Whereas the prior FOIA litigation resolved only the question of whether the Peace Corps had decided to terminate Plaintiff, this lawsuit presents the question of whether the Peace Corps made conditions so unpalatable to Plaintiff that he was, in effect, compelled to resign.  To the extent that any of the district court's or D.C. Circuit's findings and conclusions overlap with the central legal issue

7

presented in this case, they were not "a critical and necessary part of the judgment in the earlier action," which presented a narrower question about the precise character of the ASR. Id. It is true that many of the findings and conclusions set forth in the prior proceedings involve issues that are *relevant* to the legal issues presented in this case. See, e.g., Proposed Findings and Conclusions ¶ 16 ("[T]here is no credible evidence that Mr. Giron disclosed this information *with the intent* to coerce Mr. Horowitz to resign." (emphasis added)). Thus, the FOIA proceedings may preclude Plaintiff from relitigating certain issues related the Peace Corps' decisionmaking process. Yet none of the findings of fact or conclusions of law made in the prior FOIA litigation are necessarily inconsistent with Plaintiff's contention that his resignation was forced. See Horowitz, 428 F.3d at 278 (distinguishing the issues presented in the FOIA litigation from "Horowitz's real complaint . . . that he had to choose between two unpalatable alternatives"). For this reason, the Court holds that the prior FOIA litigation does not bar the instant lawsuit.

## II. Failure to State a Claim

Notwithstanding the Court's conclusion that Plaintiff is not collaterally estopped from pursuing the claims presented in this action, the Court nonetheless concludes that the lawsuit must be dismissed. Even assuming the validity of Plaintiff's claims for age and sexual orientation discrimination, those claims are nonetheless time-barred because Plaintiff failed to pursue administrative remedies in a timely fashion. Further, the Court concludes that Plaintiff's amended complaint cannot sustain claims under either the APA or the Tucker Act.

*A. Discrimination Claims*

A claim against the Peace Corps for illegal discrimination must proceed first through an administrative process. See generally Volunteer Discrimination Complaint Procedure, 45 C.F.R. § 1225. Under federal regulations, an aggrieved volunteer "shall bring such allegations [of discrimination] to the attention of the appropriate [entity] within 30 days of the alleged discrimination to attempt to resolve them." Id. § 1225.8(a). A volunteer's failure to present allegations in a timely fashion may be excused by the agency, but the untimeliness of a grievance is a sufficient basis for dismissing it. Id. § 1225.9(a)(1).

Here, the allegedly discriminatory acts occurred not later than March 17, 1999, when Plaintiff tendered his resignation to the Peace Corps. Plaintiff filed his "allegation" of discrimination more than six months later, on September 27, 1999, and filed his "complaint" of discrimination on March 30, 2000, more than a year after his resignation. The Peace Corps dismissed the complaint as untimely. Am. Compl., Ex. B at 1-2 (citing 45 U.S.C. § 1225.8(a)).

This Court concludes that dismissal was proper. The federal regulations direct the Peace Corps to "extend the time limits" set forth in the complaint procedure "(a) when the complainant shows that he or she was not notified of the time limits and was not otherwise aware of them, or (b) the complainant shows that he or she was prevented by circumstances beyond his or her control from submitting the matter in a timely fashion, or (c) for other reasons considered sufficiently by the agency." 45 U.S.C. § 1225.8(a). The agency permissibly concluded that Plaintiff made no such showing here.

First, as the amended complaint explicitly acknowledges, prior to his volunteer service with the Peace Corps, Plaintiff received a handbook informing him of the agency's non-discrimination policy, as well as of his obligation to bring any acts of discrimination "to the attention of the Agency within 30 days of the alleged discriminatory act." Am. Compl. ¶ 18; id., Ex. D, at 35. Second, Plaintiff acknowledges that he retained not one, but two attorneys (one in Tonga and another in the United States) within weeks of his termination to assist him with a legal challenge to the agency's actions. Id. ¶ 29 (noting that Plaintiff retained a prominent Tongan attorney on March 9, 1997, prior to his termination); Pl.'s Sur-Reply to Defs.' New Argument, Ex. F ¶ 2 (attesting that Plaintiff retained a California attorney in June of 1999). Third, Plaintiff actually initiated legal proceedings in connection with his FOIA request three months after his termination, but he did not file an allegation of discrimination until approximately than three months after that. Fourth, the complaint indicates that Plaintiff actively investigated the possibility of bringing discrimination claims against the Peace Corps immediately after his termination. For instance, in April he contacted an organization that works on behalf of gay Peace Corps volunteers, which informed him in July

9

that he may have been the victim of discrimination on the basis of sexual orientation. Nonetheless, Plaintiff did not file his complaint until nearly the end of September. Under these circumstances, the Peace Corps was well within its discretion to reject Plaintiff's complaint as untimely.

Plaintiff sets forth several arguments about why the untimeliness of his grievance should not be held against him, none of which are persuasive. First, he contends that he did not discover until many months later the basis for his age discrimination claim, *i.e.* that certain Peace Corps officials discriminated against him because he, as a 53-year-old man, had sexual contact with a young Tongan male. As Plaintiff's own complaint indicates, however, the Peace Corps indicated to him even before his resignation that it had concerns about his contact with a high school student. Am Compl. ¶¶ 24, 27 (noting that the complainant had indicated to the Peace Corp that "complainant" was an "Atenisi high school student," and that the Peace Corps had "repeated the complainant's allegation to Plaintiff"). Second, he notes that the filing of the complaint in March 1998, more than a year after his resignation, should not count against him because he filed an allegation of discrimination in September 1999. This argument ignores that the allegation was filed more than six months after the Plaintiff's resignation, and was thus itself many months overdue.

Plaintiff also argues that he was unaware of a Peace Corps policy against sexual orientation discrimination until August of 1999, and that he timely filed his allegation of discrimination once he became aware of that policy. This argument is unpersuasive for several reasons. To begin, grounds for equitable tolling of a deadline generally do not exist because a Plaintiff is unaware of the legal basis for his claims. Rather, they exist only when the *facts* giving rise to that claim are known to the Plaintiff. See, e.g., Kronisch v. United States, 150 F.3d 112, 122-23 & n.5 (2d Cir. 1998). Here, Plaintiff was aware of the factual basis for a claim of sexual orientation discrimination at the time of his resignation, which was prompted in part by the fact that the Peace Corps had based its potential decision to terminate Plaintiff on his alleged homosexual contact with a Tongan of student age. Am. Comp. ¶¶ 24, 27, 29, 36. Moreover, it is evident from the complaint that Plaintiff was at least initially

10

suspicious that the Peace Corps had acted improperly, as shown by the fact that he sought legal counsel to challenge the Peace Corps' conduct. Under Ninth Circuit law, the fact that Plaintiff obtained legal counsel with regard to his termination ends any right to equitable tolling for claims that might arise out of that incident. Leorna v. U.S. Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997) ("[O]nce a claimant retains counsel, tolling ceases because she has 'gained the "means of knowledge" of her rights and can be charged with constructive knowledge of the law's requirements.'" (quoting Stallcop v. Kaiser Found. Hosps., 820 F.2d 1044, 1050 (9th Cir. 1980))). Contrary to Plaintiff's assertion, it does not matter that he did not retain these attorneys to pursue precisely the same causes of action that he advances in this complaint. Rather, he knew enough about the conduct of the Peace Corps to initiate legal action against the agency; the fact that he elected to advance some claims rather than others, or was unaware of the particular legal merit of certain causes of action, is insufficient to excuse his untimely complaint. See United States v. Kubrick, 444 U.S. 111, (1979) (holding that a claim accrues when a plaintiff is "armed with the facts about the harm done to him" and does not "await awareness by the plaintiff that his injury was *negligently* inflicted," regardless of whether an attorney affirmatively and wrongly advised him at an earlier date that his claim was without merit (emphasis added)).

Finally, even if the Court were to accept Plaintiff's theory that his lack of knowledge about the Peace Corps' particular anti-discrimination policy--which is not incorporated into the federal regulations governing volunteer complaint procedures, see 45 C.F.R. §1225.3(c)-- entitled him to equitable tolling, his complaint would *still* be untimely. By Plaintiff's own admission, more than thirty days passed between the time that he learned of the Peace Corps' policy and the time he filed his allegation. Pl.'s Sur-Reply to Defs.' New Argument at 2-3.

Thus, the Court cannot conclude that the agency incorrectly dismissed as untimely Plaintiff's claims of age and sexual orientation discrimination, much less that the agency's dismissal of the grievance was "arbitrary or capricious" or a denial of due process. For this

//

//

11

reason, Defendant's motion to dismiss is hereby GRANTED as to Plaintiff's claims of age discrimination and sexual orientation discrimination.[2]

### B. Tucker Act Claim

Plaintiff alternatively frames his claim for sexual orientation discrimination as a claim for breach of contract under the Tucker Act. See 28 U.S.C. § 1346. Specifically, he alleges that the Peace Corps' pledge not to discriminate on the basis of sexual orientation was an implied contract, which the Peace Corps breached by firing him.

The Court holds that Plaintiff has failed to state a claim under the Tucker Act. To prevail on such a claim, Plaintiff must ultimately demonstrate (1) that he and the government mutually intended to enter into a contract; (2) that consideration was offered by both parties to the contract; (3) that there is a lack of ambiguity in the offer and acceptance; and (4) that the government's representative had actual authority to bind the government in contract. City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). Even when they are construed in the most favorable light possible, the facts set forth in Plaintiff's complaint are insufficient to support such a claim. First, the government's unilateral pronouncement of a policy toward Peace Corps volunteers does not demonstrate mutual intent to enter into a contract. Moreover, the idea that Plaintiff intended to enter into a contract with the Peace Corps is belied by his own contention that he knew nothing of the anti-discrimination policy until after he was terminated. (See Plaintiff's Sur-Reply at 2.)

Second, even if the Peace Corps' pledge could be so construed, Plaintiff has failed to allege that the Peace Corps received any consideration *for its pledge*. Although Plaintiff rightfully points out that he committed to a certain term of service with the agency, which would be considered valuable consideration under certain circumstances, his complaint

---

[2] In his complaint, Plaintiff purports to pursue claims under the Administrative Procedure Act and the Due Process Clause. See Am. Compl. ¶¶ 1, 4, 52-54. Both of these ostensibly independent claims are essentially a challenge to the Peace Corps' resolution of Plaintiff's administrative complaint. For the same reasons that the Court finds that Plaintiff cannot proceed on his claims for discrimination, the Court also concludes that Plaintiff's claims under the APA and the Due Process Clause are without merit. The administrative decision made by the Peace Corps to dismiss Plaintiff's complaint as untimely was neither arbitrary nor capricious, and the grievance procedure available to him satisfied the strictures of the Fifth Amendment.

1 makes clear that he committed to that term of service *prior* to the Peace Corps unilateral
2 pledge to administer its programs without regard to the sexual orientation of participants.
3 Thus, the allegations set forth in the complaint preclude any argument that the Peace Corps
4 received any consideration from Plaintiff in return for its pledge of non-discrimination.

## CONCLUSION

Because the Court concludes that the Peace Corps acted within its discretion in dismissing Plaintiff's grievance for discrimination as untimely, the Court hereby GRANTS the motion to dismiss as to Plaintiffs' claims for age discrimination and sexual orientation discrimination, as well as his putative claims under the APA and the Due Process Clause. Because Plaintiff has failed to set forth facts that he and the government mutually intended to enter into a contract, or that consideration was offered in connection with the putative contract, the Court GRANTS the motion to dismiss as to Plaintiff's claim under the Little Tucker Act as well. Accordingly, Plaintiff's complaint is hereby DISMISSED. Because the allegations set forth in the complaint affirmatively preclude Plaintiff from proceeding on any of his claims, the Court finds that amendment of the complaint would be futile, and dismissal is therefore granted with prejudice.

**IT IS SO ORDERED.**

Dated: May 8, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\5020\order4.wpd            13